UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DIAMOND "D" CONSTRUCTION CORP.

                             Plaintiff,

        -vs-                              00-CV-335C(F)

NEW YORK STATE DEPARTMENT OF LABOR,
BUREAU OF PUBLIC WORKS, et al.,

                             Defendants.

_____

HENRY W. KILLEEN, III
KILLEEN & KILLEEN,

                             Plaintiffs,

          -vs-                           03-CV-0377C(F)

JOSEPH DiPIZIO,

                             Defendant.

_____

       These matters were referred to United States Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1) for the purpose of resolving the pending dispute over the payment of attorney's fees to Henry W. Killeen III, Esq., and the law firm of Killeen & Killeen (referred to collectively herein as "Killeen"), for legal services performed in connection with Killeen's representation of the Diamond "D" Construction Corp. in Case No. 00-CV-335.

       On August 20, 2004, Judge Foschio issued a "Report and Recommendation/Decision and Order" making the following recommendations:

1.      Plaintiff Diamond "D"'s motion in Case No. 00-CV-335 (Item 102)[1] for an interim award of attorney's fees against the State pursuant to 42 U.S.C. § 1988 should be denied;

2.      Killeen's motion in Case No. 00-CV-335 (Item 173) for the court to determine the amount of an attorney's charging lien pursuant to New York Judiciary Law § 475 should be denied without prejudice to renew should Diamond "D" ultimately enjoy some success on the merits of the underlying § 1983 action to which a charging lien could attach, and subject to an evidentiary hearing to determine whether Killeen & Killeen's fee was contingent on such success;

3.      Defendant Joseph DiPizio's motion to dismiss Case No. 03-CV-377 for lack of jurisdiction should be granted, and the case should be closed.

(Item 302, p. 37; published in Westlaw as *Diamond D Const. Corp. v. New York State Dept. of Labor*, 2004 WL 1877720 (W.D.N.Y. August 20, 2004)).   Judge Foschio also dismissed as moot Killeen's motion in Case No. 00-CV-335 (Item 188) to strike the affidavit of Timothy J. Greenan, Esq., and Killeen's motion in Case No. 03-CV-377 (03-CV-377, Item 6) to consolidate the two cases (*id*.).

On September 2, 2004, Killeen filed objections (Item 304) to Judge Foschio's Report and Recommendation/Decision and Order.   Killeen contends that Judge Foschio erred in determining that (1) Diamond "D" was not a "prevailing party" within the meaning of 42 U.S.C. § 1988(b), and therefore Killeen was not entitled to an award of statutory attorney's fees against the State; (2) Killeen was not entitled to enforcement of an attorney's charging lien under § 475 of the State Judiciary Law until such time as Diamond "D" obtains a recovery in the case; and (3) the court did not have ancillary jurisdiction over the *quantum meruit* action against Mr. DiPizio.

_____

[1]Unless otherwise specifically indicated, item numbers refer to the docket items in Case No. 00-CV-335.

On October 15, 2004, the State filed its response to Killeen's objections (Item 308), urging the court to adopt Judge Foschio's findings and recommendations with respect to the motion for interim fees under § 1988.  On December 3, 2004, Diamond "D" and Mr. DiPizio filed a "reply"(Item 309) joining in Killeen's objections to the proposed findings and recommendations for disposition of the § 1988 motion, and urging the court to adopt Judge Foschio's findings and recommendations in all other respects.

Oral argument was heard by this court on August 1, 2005.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, this court must make a *de novo* determination of those portions of the Magistrate Judge's proposed findings and recommendations to which objections have been made.  The court may accept, reject, or modify, in whole or in part, the findings made by the Magistrate Judge.

Upon careful review of Judge Foschio's comprehensive recommendations and rulings as to the disposition of the difficult matters presented, and after reviewing the parties' submissions and hearing oral argument, the court finds as follows.

## I.     Interim Award of Attorney's Fees Pursuant to 42 U.S.C. § 1988

### A.        "Prevailing Party"

In recommending denial of Diamond "D"'s motion for an interim award of attorney's fees against the State, Judge Foschio discussed the legal  standards for determining whether Diamond "D" could be considered a "prevailing party" for the purposes of 42

U.S.C. § 1988.[2]   As noted by the Magistrate Judge, the Supreme Court's opinion in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), is particularly instructive.

*Buckhannon* involved the fee-shifting provisions of the Fair Housing Amendments Act of 1988 (FHAA) and the Americans with Disabilities Act of 1990 (ADA), which are substantially similar to § 1988.   The Supreme Court rejected the "catalyst theory" recognized by most of the circuit courts under which a plaintiff was considered to be a "prevailing party" entitled to an award of statutory attorney's fees if it "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601-03.  *Buckhannon* held that  to be considered a "prevailing party," a plaintiff must not only achieve some "'material alteration of the legal relationship of the parties . . . ,'" *id.* at 604 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989)), but the alteration must be accompanied by "the necessary judicial *imprimatur* . . . ."  *Id.* at 605.  As explained by the Second Circuit, it is not enough that the plaintiff attained "some relief" which changes the parties' legal relationship; "that change must also be judicially sanctioned."   *Roberson v. Giuliani*, 346 F.3d 75, 79-80 (2d Cir. 2003); *see also New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n*, 272 F.3d 154, 157 (2d Cir. 2001).

Applying this standard, Judge Foschio found that Diamond "D" achieved some measure of success when this court issued its January 2001 decision and order granting

---

[2]42 U.S.C. § 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."

the motion for preliminary injunctive relief and directing the release of funds–over $1.2 million–withheld in connection with the ongoing administrative proceedings before the New York State Department of Labor ("DOL").  However, the Magistrate Judge also found that the release of the withheld funds did not occur pursuant to a "judicially sanctioned" directive because the preliminary injunction was later vacated by the Second Circuit as having been issued without subject matter jurisdiction, following the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971) (*see* Item 302, p. 19; 2004 WL 1877720, at *8).

As Killeen and Diamond "D" point out in their objections, this finding appears to have been based in substantial part on Judge Foschio's belief that the funds were not actually released until sometime after the Second Circuit's March 1, 2002 vacatur of this court's preliminary injunction order.[3]  In fact, the funds were released to Diamond "D" in February 2001 when the Second Circuit denied defendants' motion for a stay pending resolution of the appeal (*see* Item 304, Ex. A).[4]  This discrepancy is significant, and it highlights the unique posture of the case while on appeal.  When presented with the opportunity to stay the effect of this court's directive to release the withheld funds to Diamond "D," the Second Circuit decided to leave that aspect of the preliminary injunction ruling undisturbed.  As a result, Diamond "D" received the immediate benefit of the funds, which satisfied in large measure the relief it sought when it filed the case in April 2000.  This result undeniably

---

[3]Specifically, Judge Foschio found that, "[i]n April 2003, the DOL filed new withholding notices against Diamond D which reduced the withheld amounts by $900,000.  The DOL has since released all the withheld funds and Diamond D and DiPizio have continued to refuse to pay attorney fees . . . ." (Item 302, p. 15; 2004 WL 1877720, at *6).

[4]In its February 1, 2001 order denying the stay, the Second Circuit stated that "defendants-appellants have not demonstrated either irreparable injury or a substantial possibility of success on appeal" (Item 304, Ex. A).

altered the legal relationship between the parties, and received the judicial *imprimatur* of both the district and circuit courts.

The judicial sanction of the release of the withheld funds as a consequence of the denial of defendants' motion for a stay was not upset by the Second Circuit's March 1, 2002 vacatur order, because the circuit court did not directly address the matter. Instead, the Second Circuit focused entirely on that aspect of the district court's ruling which enjoined the ongoing State administrative proceedings. This is understandable, since the legal and factual issues raised by an injunction against ongoing state administrative proceedings fall squarely within the doctrine of *Younger* abstention, and given the likelihood that the appeal from the district court's directive to release the funds had long since been rendered moot. *Cf. Matter of Sarbro IX v. McGowan*, 271 A.D.2d 829, 830, 706 N.Y.S.2d 244, 245 (3d Dept. 2000) (Article 78 petition to vacate DOL withholding notices; payment of entire amount withheld rendered appeal moot).

Equally understandable is Judge Foschio's apparent confusion about the chronology of certain events, considering the daunting task assigned to him by virtue of this court's referral orders, the magnitude of the file, the long history of the contentious relationships among the parties and their counsel, and the unorthodox manner in which the Second Circuit rendered its opinion and mandate. Nonetheless, it is clear to this court that Diamond "D" obtained a substantial benefit as a direct result of the legal services rendered by Killeen, and that this material change in the legal relationship between the parties received judicial sanction when both this court and the Second Circuit denied defendants' motions for a stay pending appeal. This result is sufficient to invoke the court's discretion

under § 1988(b) allowing Diamond "D" to recover a reasonable interim attorney's fee, payable directly to Killeen.

The court now turns to the task of calculating a reasonable fee.

## B.    Calculation of the Fee

The ordinary starting point for determining the amount of a reasonable fee award under § 1988(b) is  the traditional "lodestar" method, representing "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Haley v. Pataki*, 901 F. Supp. 85, 89 (N.D.N.Y. 1995), *aff'd*, 106 F.3d 478 (2d Cir. 1997).  In general, the hourly rate "should be calculated according to the prevailing rates in the community '*for similar services by lawyers of reasonably comparable skill, experience and reputation*.'" *Cefali v. Buffalo Brass Co., Inc.*, 748 F. Supp. 1011, 1018 (W.D.N.Y. 1990) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989), *cert. denied*, 496 U.S. 905 (1990)).

In this case, Killeen has submitted invoices setting forth the following figures for the court's lodestar calculation of attorney time expended on the case by attorneys associated with the Killeen firm from March 2000 through April 2003,[5] at current[6] hourly rates:

---

[5] As set forth in Killeen's reply memorandum submitted in connection with the proceedings before Magistrate Judge Foschio (Item 275), these time, rate, and amount calculations cover the legal work performed by attorneys associated with the Killeen firm for all proceedings before the district court through the grant of the preliminary injunction, proceedings in the Second Circuit, and subsequent proceedings in this court related to the attorney fee issue.

[6] "[I]n order to provide adequate compensation where the services were performed many years before the award was made, the rates used by the court . . . should be 'current rather than historic hourly rates.'" *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)).

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Allithea E. Killeen | 29.70 | $225/hr. | $    6,682.50 |
| Henry W. Killeen, III | 758.51 | $300 | 227,529.90 |
| Anna Marie Richmond | 286.81 | $200 | 57,362.00 |
| Christopher Paresi | 64.40 | $75 | 4,830.00 |
| Margaret L. Phillips | 1.00 | $75 | 75.00 |
| Jorie Brock | 259.18 | $110 | 28,509.80 |
| Joe Wright | 20.74 | $75 | 1,555.50 |
| Stacy Cockshott | 3.61 | $75 | 270.75 |
| TOTALS: | 1,423.95 | | $326,815.45 |

(Item 277, Exs. A & B).  The invoices also itemize disbursements during this period in the amount of $7,921.12 (*id.*).

Killeen also sets forth the following figures for the court's lodestar calculation of attorney time expended by attorneys associated with the Killeen firm during May 2004 in relation to the application for § 1988 fees:[7]

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Henry W. Killeen, III | 34.57 | $283.56 | $ 9,802.50 |
| Jorie Brock | 33.55 | $110.00 | 3,690.50 |
| TOTALS: | 68.12 | | $13,493.00 |

(*Id.*, Ex. C).

---

[7]*See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (reasonable fee should be awarded for time reasonably spent in preparing and defending application for § 1988 fees).

As documented by the affirmations of Anna Marie Richmond, Esq. (Item 279) and David L. Cook, Esq. (Item 281), the rates set forth in these invoices are reasonable and commensurate with those charged by comparable attorneys in the Western District of New York.  Based on these submissions, the court calculates the lodestar figure for Killeen's fees at $340,308.45.

Although there is a strong presumption that the lodestar figure represents a reasonable fee, *see City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), other considerations may lead to an upward or downward adjustment of the lodestar.  *Hensley*, 461 U.S. at 434.  The most critical factor to consider is the degree of success obtained by the plaintiff.  *Id.* at 436; *Alnutt v. Cleary*, 27 F. Supp. 2d 395, 401 (W.D.N.Y. 1998).  As explained by the Supreme Court in *Hensley*, where there are unsuccessful claims interrelated with the successful claims, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award.  *Hensley*, 461 U.S. at 436; *see also Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992), *cert. denied sub nom. Bethlehem Steel Corp. v. Grant*, 506 U.S. 1053 (1993).

"There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."  *Hensley*, 461 U.S. at 436-37; *see also United States Football League v. National Football League*, 887 F.2d 408, 413-14 (2d Cir. 1989) (affirming district court's 20 percent reduction of award to account for plaintiff's "limited" success), *cert. denied*, 493 U.S. 1071(1990); *New York State Ass'n for Retarded Children*

*v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (recognizing that because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," percentage cuts are "a practical means of trimming fat from a fee application"); *Scanlon v. Kessler*, 1998 WL 726047, at *4 (S.D.N.Y. October 14, 1998) (reducing plaintiff's lodestar figure by a percentage to account for plaintiff's limited success).

As the discussion above demonstrates, although Diamond "D" was indeed successful in attaining one of the primary goals of this lawsuit as a result of this court's preliminary injunction ruling–*i.e.*, release of the initial $1.2 million withheld in connection with the DOL's administrative proceedings–it was not ultimately successful in attaining its alternative goal of enjoining the administrative proceedings altogether. In addition, it is clear from reviewing the invoices that much of the time charged by Killeen to Diamond "D"'s account represents duplication of effort by the several attorneys working on the case. Accordingly, I find it appropriate under all of the circumstances to reduce the lodestar amount by 25 percent. This results in an interim award of attorneys' fees under 42 U.S.C. § 1988(b) in the amount of $255,231.34, plus disbursements of $7,921.12, for a total award of $263,152.46.

Finally, the court recognizes that this ruling addresses only Killeen's fee application, and not the applications of Timothy J. Greenan (*see* Item 104) and Brian P. Fitzgerald (*see* Item 106) submitted in connection with the original motion for interim attorneys' fees.[8] However, considering all of the circumstances presented, including the number of

---

[8]In his application, Mr. Greenan sought attorney's fees in the amount of $176,881.25, and disbursements in the amount of $1,068.60 (*see* Item 104, p. 4). Mr. Fitzgerald sought attorney's fees in the amount of $330,787.00, and disbursements in the amount of $52,100.92 (*see* Item 106, p. 24).

attorneys involved in the prosecution of plaintiff's case (no less than ten), the limited success ultimately attained, and the magnitude of the fee allowed, I find that this award represents the entire amount recoverable from the State as an interim attorney fee in connection with this case.  Counsel shall be left to their own devices to determine the appropriate dispersal of this joint fee amount.  The court will allow Mr. Greenan's reported disbursements in the amount of $1,068.60 (*see* Item 104).  However, Mr. Fitzgerald's reported disbursements appear to be related primarily to costs associated with the DOL's administrative proceedings, and there is nothing in his application that would provide this court with a reasonable basis to determine whether any of the disbursements listed should be deemed recoverable as costs associated with the proceedings in the federal court action.

Based on the foregoing, the court rejects Judge Foschio's Report and Recommendation to the extent it recommends denial of Diamond "D"'s motion in Case No. 00-CV-335 (Item 102) for an interim award of attorney's fees pursuant to 42 U.S.C. § 1988(b).  For the reasons discussed above, that motion is granted, and the State of New York is directed to remit a total of $264,162.96 directly to the Killeen firm, representing the entire amount of interim attorney's fees and disbursements recoverable from the State in this case.

## II.    Attorney's Charging Lien/Account Stated

With respect to Killeen's motion to have the court determine the amount of an attorney's charging lien pursuant to New York Judiciary Law § 475, Judge Foschio recommended that the court deny the motion without prejudice to renew should Diamond

"D" ultimately enjoy some success on the merits of the § 1983 action to which a charging lien could attach.  In making this recommendation, the Magistrate Judge noted that there was nothing to prevent Killeen from making a separate request (within the court's jurisdiction under § 1983) for an award of attorney's fees based on a "quasi-contract" theory which, if successful, could result in an award enforceable against Diamond "D"'s assets "irrespective of the § 1983 action and any subsequent § 1988 request."  (Item 302, p. 30 n. 15; 2004 WL 1877720, at *13 n. 15).

Killeen objects to this aspect of the Report and Recommendation on the ground that, while his motion papers might not have accomplished the job, he sought to make it clear to the Magistrate Judge that his request for entry of judgment against Diamond "D" and Mr. DiPizio was intended to encompass a fee award based on alternative theories of contract law, independent from his request for a § 475 charging lien.  For example, in his supplemental submissions to Judge Foschio, Killeen explained that the relief sought against Diamond "D" and Mr. DiPizio in connection with the May 2003 motion to withdraw encompassed not only the request for determination and enforcement of a charging lien, but also a request for entry of judgment as a matter of law--on the record presented and without the need for an evidentiary hearing--under the theory of "account stated."  *See* Item 259, pp. 7-10; Item 271, pp. 2-7.

The Magistrate Judge did not reach this aspect of Killeen's charging lien motion. Instead, in a footnote to his discussion of the motion for interim fees under § 1988, Judge Foschio stated that since he was recommending denial of the § 1988 motion, he "need not address whether such an award should be made according to the doctrine of 'account stated' or as a matter of *quantum meruit*."  Item 302, p. 20 n. 8; 2004 WL 1877720, at *9

n. 8.  However, as Killeen's motion papers and objections make clear, the claim for an account stated has nothing to do with the § 1988 motion for statutory attorney's fees chargeable to the State, but rather is made only with respect to attorney's fees chargeable to the clients–Diamond "D" and/or Mr. DiPizio.

Accordingly, I decline to adopt Judge Foschio's recommendation in this regard.  Due to the long pendency of the fee dispute as well as the prejudice to Mr. Killeen and his law firm in delaying the court's disposition of the matter any further, and recognizing its "responsibility to protect its own officers in such matters as fee disputes . . . ," *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988), *quoted in Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 444 (2d Cir. 1998), the court will proceed to a determination of the claim for an account stated without recommitting the case to the Magistrate Judge.

Under New York Law, as succinctly stated by the Appellate Division in *Chisholm-Ryder Company, Inc. v. Sommer & Sommer*, 70 A.D.2d 429, 421 N.Y.S.2d 455 (4th Dep't 1979):

> An account stated is an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or the other.  In the case of an existing indebtedness, the agreement may be implied as well as express.  An agreement may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time because the party receiving the account is bound to examine the statement and object to it, if objection there be.  Silence is deemed acquiescence and warrants enforcement of the implied agreement to pay.  . . .  In the absence of fraud, mistake or other equitable considerations making it improper to recognize the agreement, it is conclusive.

70 A.D.2d at 431, 421 N.Y.S.2d at 457 (citations omitted); *see also O'Connell & Aronowitz v. Gullo*, 229 A.D.2d 637, 638, 644 N.Y.S.2d 870, 871 (3rd Dep't), *leave to appeal denied*, 89 N.Y.2d 803 (1996) (attorney can recover under cause of action for account stated with proof that bill for legal services was issued to and held by client without objection for an unreasonable period of time).

The undisputed facts set forth in the record before the court show that on July 15, 2002, Killeen sent Mr. DiPizio a letter requesting payment of an attached itemized bill for legal services performed by the Killeen firm, plus disbursements, totaling $272,754.06 (Item 174, Exs. A and B).   In the letter, Killeen stated his understanding of the fee arrangement made at the time he was hired by DiPizio, *i.e.*, "that we would be paid for our time at our standard rates.  You did not ask us to work on a contingent fee basis." (*Id.*, Ex. A at p. 1).  Killeen also outlined the "significant amount of success" his firm helped achieve in accomplishing the litigation goals of releasing the funds withheld by the DOL and temporarily stopping the DOL administrative hearings (*id.*), and invited DiPizio to discuss "openly and candidly [his] proposals for addressing" the attorney fee situation (*id.* at p. 2).

The record also shows that Mr. DiPizio did not directly respond to the matters set forth in Killeen's July 15, 2002 letter, and made no effort to address the bill or object to its stated terms in any verifiable manner until June 2003, when he filed his affirmation (Item 179) in response to Killeen's May 2003 motion to withdraw.  There, DiPizio affirms that he "never deliberately disregarded an agreement or obligation to [Killeen] with respect to fees in this matter . . . ," (Item 179, ¶ 2), but rather:

> I repeatedly told Mr. Killeen throughout this proceeding and he repeatedly indicated that he understood that I could not and would not pay him fees unless the action against DOL was successful and his only avenue to get paid for what he had invested was to be declared a "prevailing party."

(*Id.* at ¶ 3).

Diamond "D" contends that these disputes about the terms of the original fee arrangement, the amount allegedly owed, and the source of funds out of which any fees would be paid present genuine issues of material fact precluding judgment in Killeen's favor on his claim for an account stated. Diamond "D" also contends that since the legal services in question were rendered exclusively to the corporate plaintiff, there is no authority for the court to impose liability for attorney's fees upon Mr. DiPizio personally.

I find these contentions unavailing under the circumstances of this case for several reasons. First of all, New York law is clear that receipt and retention of a bill for legal services rendered, without objection within a reasonable time, gives rise to an actionable account stated, independent of the original obligation. *Fink, Weinberger, Fredman, Berman & Lowell, P. C. v. Petrides*, 80 A.D.2d 781, 781, 437 N.Y.S.2d 1, 2 (1st Dep't), *appeal dismissed*, 53 N.Y.2d 1028 (1981). Mr. DiPizio's assertions that Killeen had orally agreed to render legal services without charge, and knew all along that neither DiPizio nor Diamond "D" had any intention of paying his fees, "are conclusory . . . , and contradicted by the evidence of an unsatisfied accord between the parties. The validity of the account is not undermined by any understanding the parties may have had at the commencement of their relationship to defer payment until proceeds were realized from [the attorneys'] efforts." *Ellenbogen & Goldstein v. Brandes*, 226 A.D.2d 237, 237-38, 641 N.Y.S.2d 28,

29 (1st Dep't 1996) (citing *Davis Markel & Edwards v. Solomon*, 204 A.D.2d 182, 612

N.Y.S.2d 28 (1st Dep't 1994)), *leave to appeal denied*, 89 N.Y.2d 806 (1997).

In addition, where a valid attorney's fee account is recognized, courts have not

required the attorney to establish the reasonableness of the fee "since the client's act of

holding the statement without objection [is] construed as acquiescence as to its

correctness."  *O'Connell & Aronowitz*, 229 A.D.2d at  638, 644 N.Y.S.2d at 871.  In the

*O'Connell & Aronowitz* case, the court found it particularly compelling that the client was

a sophisticated business person, and the unpaid bills–though unitemized–were for a

substantial amount (over $116,000) and were held without objection for an unreasonable

length of time (between seven and fourteen months).  Similarly, in this case it is reasonable

to expect that a sophisticated business person in Mr. DiPizio's shoes, when presented with

a fully itemized bill for attorney's fees of such magnitude, would have voiced an objection

within a reasonable time in a verifiable manner.  Yet, there is nothing in the record before

the court to indicate that he did so.

The objections to the bill asserted by Mr. DiPizio and his attorneys in response to

Killeen's motion to withdraw are insufficient to defeat Killeen's entitlement to judgment on

the account stated in this case.  As discussed in *Fink, Weinberger*, a party opposing a

motion for judgment on an account stated will not prevail based solely on conclusory, after-

the-fact assertions made in an affidavit.  Rather, the party "must disclose in evidentiary

form the parol evidence on which it relies.  Bald conclusory assertions, even if believeable

[sic], are not enough . . . ."  *Fink, Weinberger*, 80 A.D.2d at 781-82, 437 N.Y.S.2d at 2

(internal quotation marks omitted).

Further, it is beyond dispute that Diamond "D" and Mr. DiPizio derived substantial benefit from the legal services performed by Killeen and the lawyers associated with his law firm.  This court is well aware of the effort put forth by all attorneys involved in litigating the issues presented by the original complaint and application for preliminary injunctive relief in this case.  As the direct result of those efforts, Diamond "D" obtained the release of over $1.2 million in withheld funds, as well as temporary cessation of the State administrative hearings.  Indeed, as alluded to above, an argument could be made that this result substantially satisfied the relief sought by plaintiff at the outset of the case.  Yet, Diamond "D" has not made any payment to Killeen for the legal services rendered in obtaining this result.  The bulk of those services were provided, and related costs were incurred, more than five years ago, and the bill was tendered more than three years ago.  To allow this account to remain outstanding any longer would undeniably result in severe prejudice to Killeen & Killeen which the court, in the exercise of its discretion to protect the interests of its officers in collecting fees for services rendered, has the responsibility to prevent.  *Cf. Itar-Tass*, 140 F.3d at 444; *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 2000 WL 502864, at *2-3 (S.D.N.Y. April 27, 2000), *aff'd*, 2 Fed.Appx. 78 (2d Cir. 2001).

This exercise of discretion includes the authority to enter judgment for an account stated against Mr. DiPizio personally, notwithstanding his lack of party status, and without the need for a separate suit.  *See Alderman v. PanAm World Airways*, 169 F.3d 99, 101-02 (2d Cir. 1999)  (federal courts may exercise supplemental jurisdiction to hear fee disputes related to the main action); *Joseph Brenner Assoc., Inc. v. Starmaker Entertainment, Inc.*, 82 F.3d 55, 58 (2d Cir. 1996) (same).

Accordingly, in the absence of any showing of fraud, mistake, or other equitable considerations making it improper to recognize the implied agreement to pay fees for legal services rendered, the court finds it reasonable and appropriate to enter judgment against Diamond "D" and Mr. DiPizio personally in this action upon an account stated as set forth in Item 174, Exhibit B, adjusted to reflect Killeen & Killeen's updated billing rates as set forth in Item 277, Exhibit A, p. 22.  This results in an account stated for attorney's fees and disbursements in the amount of $333,205.66,[9] to be offset by the interim fee amount awarded under 42 U.S.C. § 1988.

Based on the foregoing, I find no need to require Killeen to wait until Diamond "D" ultimately enjoys some success on the merits of the § 1983 action in order to obtain the determination and enforcement of an attorney's charging lien pursuant to New York Judiciary Law § 475.   As noted by the Magistrate Judge in his Report and Recommendation/Decision and Order, a charging lien would attach not only to the verdict in the § 1983 action, but also to an award of attorney's fees under § 1988, and no hearing on the matter would be necessary provided the award was sufficient to satisfy Killeen's outstanding bill for legal services rendered in connection with the § 1983 action (Item 302,

---

[9]This amount reflects $324,856.80 in attorneys' fees, plus $8,348.86 in disbursements.  The attorneys' fee calculation is broken down as follows:

| Attorney | Hours | Rate | Amount |
|----------|-------|------|--------|
| AEK | 29.70 | $225/hr. | $    6,682.50 |
| HWK | 752.14 | $300 | 225,642.00 |
| AMR | 287.81 | $200 | 57,562.00 |
| MLP | 1.00 | $75 | 75.00 |
| JB | 259.18 | $110 | 28,509.80 |
| AET | 64.40 | $75 | 4,830.00 |
| JW | 20.74 | $75 | 1,555.50 |
| TOTALS | 1,414.97 | | $324,856.80 |

p. 25-26; 2004 WL 1877720, at *11). In light of the rulings set forth above, this is precisely what has now occurred.

Accordingly, the court rejects Judge Foschio's proposed findings and recommendations to the extent he declined to reach Killeen's claim for an account stated, and to the extent he recommended denial of Mr. Killeen's motion in Case No. 00-CV-335 for the court to determine the amount of an attorney's charging lien pursuant to New York Judiciary Law § 475 without prejudice to renew should Diamond "D" ultimately enjoy some success on the merits of the underlying § 1983 action. As a result, that motion (Item 173) is granted, and Killeen is entitled to enforcement of a charging lien sufficient to satisfy Killeen's outstanding bill for legal services rendered in connection with the § 1983 action.

## III.    Motion to Dismiss Case No. 03-CV-377

Finally, Judge Foschio recommended that this court grant Mr. DiPizio's motion to dismiss Case No. 03-CV-377–Killeen's *quantum meruit* claim against DiPizio personally– for lack of supplemental jurisdiction. Killeen notes in his objections that the separate *quantum meruit* action was filed as an attempt to bring Mr. DiPizio himself before this court to respond personally to the claim for attorney's fees even though he is not a party to the § 1983 action.

As discussed above, there is ample Second Circuit authority for this court, in its discretion, to exercise supplemental jurisdiction over fee disputes between litigants and their attorneys when the dispute relates to the main action. *Alderman*, 169 F.3d at 101-02; *Joseph Brenner Assoc., Inc.*, 82 F.3d at 58. Accordingly, this court has jurisdiction to

render judgment against Mr. DiPizio personally in Case No. 00-CV-335–the main action–without recourse to Case No. 03-CV-377 for this purpose.

For this reason, the court adopts Judge Foschio's recommendation to dismiss Case No. 03-CV-377.

## CONCLUSION

Based on the foregoing, the following is ordered:

1. Diamond "D"'s motion in Case No. 00-CV-335 for an interim award of fees pursuant to 42 U.S.C. § 1988 (Item 102) is granted in the amount of $264,162.96. Considering all of the circumstances, including the contentious nature of the fee dispute, the court directs the State of New York to remit payment of the fee award directly to the Killeen firm.  This award represents the entire amount of interim attorney's fees and disbursements recoverable from the State in this case.  In furtherance of the resolution of this dispute within the spirit of this order, Messrs. Killeen, Fitzgerald, and Greenan shall meet informally to discuss the appropriate dispersal of this joint fee amount.

2. Killeen's motion in Case No. 00-CV-335 (Item 173) for the court to determine the amount of an attorney's charging lien pursuant to New York Judiciary Law § 475, and for judgment as a matter of law upon an account stated, is granted.  Killeen is entitled to enforcement of a charging lien sufficient to satisfy his firm's outstanding bill for legal services rendered in connection with the § 1983 action.  The Clerk of the Court is directed to enter judgment against Diamond "D" and Mr. DiPizio personally in this action in the amount of $69,042.70, representing an account stated for attorney's fees and disbursements in the amount of $333,205.66, offset by the interim fee amount awarded under 42 U.S.C. § 1988.

3.     Mr. DiPizio's motion to dismiss Case No. 03-CV-377 for lack of jurisdiction (Item 3) is granted.  The Clerk of the Court is directed to enter judgment in favor of Joseph DiPizio in Case No. 03-CV-377, and to close the case.

4.     The court adopts Magistrate Judge Foschio's Decision and Order denying Killeen's motion in Case No. 00-CV-335 (Item 188) to strike Mr. Greenan's affidavit, and Killeen's motion in Case No. 03-CV-377 (Item 6) to consolidate the two cases, as not clearly erroneous or contrary to law.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: October   12   , 2005

p:\pending\2000\00-335.sept27.05.fee