UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DIAMOND "D" CONSTRUCTION CORP.,

                                          Plaintiff,

         -vs-

NEW YORK STATE DEPARTMENT OF LABOR,
BUREAU OF PUBLIC WORKS;
JAMES J. MCGOWAN, as Former
Commissioner of Labor of the State of New York;
DEPARTMENT OF AUDIT AND CONTROL,
STATE OF NEW YORK;
LINDA ANGELLO, Commissioner of Labor
of the State of New York;                                    00-CV-335C(F)
MICHAEL O'CONNELL, Department of
Audit and Control, State of New York;
RONALD KINN, individually and in his
capacity as Public Work Wage
Investigator Employed by the Department of
Labor;
DALE STANLEY, individually and in his
capacity as an employee of the Department of
Labor;
BRIAN ROBISON, individually and in his
capacity as Senior Public Work Wage
Investigator Employed by the Department of
Labor,

                                          Defendants.

---

APPEARANCES:   HISCOCK & BARCLAY, LLP (TIMOTHY J. WALKER, ESQ., of
               Counsel), Buffalo, New York, for Plaintiff.

               ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW
               YORK (SETH KUPFERBERG, ESQ., Assistant Attorney General, of
               Counsel), New York, New York, for Defendants.

Now pending for determination are plaintiff's motion (Item 201) for preliminary injunctive relief and defendants' motion (Item 219) to dismiss the "Amended and Supplemental Complaint," filed upon consent and order of the court on December 17, 2003 (Item 231). Oral argument was heard on January 5, 2004, and supplemental filings have been received and considered by the court. For the following reasons, plaintiff's motion is denied, defendants' motion is granted, and the action is dismissed.

## BACKGROUND

Plaintiff Diamond "D" Construction Corp. ("Diamond 'D'") commenced this lawsuit on April 21, 2000 against the New York State Department of Labor ("DOL"), Department of Audit and Control ("DAC"), and various state employees, seeking injunctive relief and damages pursuant to 42 U.S.C. § 1983. The original complaint set forth five causes of action based on allegations that the DOL's administrative investigation and proceedings to enforce New York's prevailing wage law, *see* N.Y. Lab. Law § 220(3); *see also* N.Y. Const., Art. I, § 17, in connection with plaintiff's work as general contractor on several public road construction projects, resulted in violations of plaintiff's procedural and substantive due process rights as well as its rights under the Fourth Amendment. Plaintiff also alleged that the state statutory scheme allowing for the withholding of public contract payments, interest, and penalties pending final determination of the administrative proceedings is unconstitutional both on its face and as applied.

The original complaint was accompanied by a motion for a preliminary injunction seeking to enjoin the DOL proceedings and to release nearly $1.5 million in payments earned on the public contracts which had been withheld as a result of the DOL's wage

investigation.  Plaintiff claimed that the investigation was conducted in bad faith, resulting in multiple meritless claims of wage underpayments with no credible evidence to support the claims, and that the funds were withheld without adequate notice or opportunity to be heard.  On June 20, 2000, after briefing and argument, this court denied plaintiff's motion for a preliminary injunction, finding that in the absence of a showing of bad faith or intent to harass on the part of the DOL, the Supreme Court's abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), required the court to abstain from interfering with the DOL's ongoing administrative proceedings.  *Diamond "D" Const. Corp. v. New York State Dept. of Labor*, 105 F. Supp. 2d 167, 175-78 (W.D.N.Y. 2000) ("*Diamond 'D' I*").  The court also found that plaintiff had failed to establish a likelihood of avoiding the Eleventh Amendment's bar against a claim for the release of the withheld funds, whether as a matter of retrospective monetary relief or prospective injunctive relief.  *Id.* at 179-83.

Plaintiff moved for reconsideration, and on August 17, 2000, the court granted the motion and modified its prior ruling in part by scheduling evidentiary hearings to resolve the related issues as to whether the DOL acted in bad faith and whether the administrative investigation and proceedings violated plaintiff's substantive due process rights.  *Diamond "D" Const. Corp. v. New York State Dept. of Labor*, 110 F. Supp. 2d 200, 209 (W.D.N.Y. 2000) ("*Diamond 'D' II*").  The court also revisited its Eleventh Amendment ruling and found that plaintiff was entitled to assert a claim for prospective injunctive relief from the DOL's investigation and enforcement action, even though ordering such relief would have the necessary and ancillary effect of causing the withheld funds to be released.  *Id.* at 202-07.

The federal court hearings took place over the course of six days in late August and early September 2000. On January 5, 2001, after extensive post-hearing submissions and oral argument, this court issued its decision granting plaintiff's motion for a preliminary injunction. *Diamond "D" Const. Corp. v. New York State Dept. of Labor*, 142 F. Supp. 2d 377 (W.D.N.Y. 2001) ("*Diamond 'D' III*"). The court made detailed "preliminary" factual findings to support its conclusion that the DOL's administrative action against plaintiff was so arbitrary, and its impact on plaintiff so severe, that both of the established exceptions to the *Younger* abstention doctrine–"bad faith" and "extraordinary circumstances"–had been satisfied. *Id.* at 398-402. Specifically, the court focused on the conduct of DOL wage investigator Ronald Kinn, finding his investigation "fundamentally flawed, very often not grounded in fact, and conducted in an arbitrary fashion . . . ," *id.* at 403, and his assessment of withholding amounts (along with penalties and interest) exorbitant, speculative, and based in large part on the DOL's own delay and inaction. *See id.* at 395-96. Having found it appropriate not to abstain from assuming federal jurisdiction, the court concluded that plaintiff had established a likelihood of success on the merits of both its substantive due process and "unconstitutionally vague as applied" claims, and would suffer irreparable harm in the absence of an injunction. *Id.* at 402-06. The court thus enjoined the DOL's ongoing administrative proceedings and ordered the DOL to withdraw all the notices of withholding, resulting in the release of over $1.2 million to plaintiff. *Id.*

The DOL appealed, and on March 1, 2002, the Second Circuit Court of Appeals issued its decision finding that this court erred in concluding that the "bad faith" and the "exceptional circumstances" exceptions to the *Younger* doctrine applied in this case.

*Diamond "D" Const. Corp. v. New York State Dept. of Labor*, 282 F.3d 191 (2d Cir. 2002)

("*Diamond 'D' IV*").   According to the circuit court, even assuming the accuracy of the

district court's findings of fact with respect to the DOL's investigation, plaintiff's financial

condition, and the pace of the DOL administrative proceedings, "these circumstances do

not come within either of the tightly defined exceptions to the *Younger* abstention doctrine."

*Id.* at 197.   Rather, in order to invoke the bad faith exception, the plaintiff must show that

the state proceeding "was initiated with and is animated by a retaliatory, harassing, or other

illegitimate motive."   *Id.* at 199.   As stated by the circuit court:

> [I]t is uncontested that the DOL initiated its wage investigation in response
> to the written allegations of underpayments made by Diamond D employees,
> pursuant to its statutory duties under New York's valid prevailing wage law.
> And Diamond D has not demonstrated that the DOL singled it out for
> adverse treatment.   To the contrary, the district court found, "there is no
> credible allegation that the DOL is incompetent by reason of bias to
> adjudicate the withholdings issue . . . ."

*Id.* at 200 (quoting *Diamond "D" III*, 142 F. Supp. 2d at 399).

As to "extraordinary circumstances," the circuit court noted that under the Supreme

Court's holdings in *Trainor v. Hernandez*, 431 U.S. 434 (1977), and *Kugler v. Helfant*, 421

U.S. 117 (1975), the litigant seeking to invoke this exception must establish *both* (1) that

there is no state process available to meaningfully and adequately remedy the alleged

constitutional violation in a timely manner, *and* (2) that the litigant will suffer "great and

immediate" harm if the federal court does not intervene.   *Id.*, 282 F.3d at 201.   The circuit

court stated:

> It is significant that to the extent that the DOL was dragging its feet,
> Diamond D was free to file a mandamus proceeding in the Appellate Division
> to compel the DOL to provide expeditious post-deprivation review as required
> by the prevailing wage law.   Indeed, the district court specifically noted that,

> *"[j]udicial review was available because Diamond D could have gone to the State courts at any time during the pendency of the DOL investigation and sought a writ of mandamus . . . ."*

*Id.* at 202 (quoting *Diamond "D" II*, 110 F. Supp. 2d at 207). Based on the assumption that, since it was available, the state mandamus procedure would have afforded plaintiff an adequate remedy, the circuit court found no need to proceed to the second prong of the inquiry–*i.e.*, to determine whether, absent the availability of state mandamus, the threat to plaintiff's survival would warrant federal court intervention by invoking the "exceptional circumstances" exception to *Younger* abstention. Accordingly, the circuit court vacated the injunction and remanded the case for further proceedings on plaintiff's remaining damages claims against the state official defendants in their individual capacities. *Id.*[1] The circuit court did not reach the issues of Eleventh Amendment immunity or defendants' challenge to the district court's conclusion that plaintiff had established a likelihood of success on the merits of its substantive due process and "constitutionally vague as applied" claims.

Subsequent to the Second Circuit's remand, this court conducted a series of meetings and conferences with the parties and counsel to address the appropriate steps to take in complying with the mandate and to explore the possibility of settlement in both the state administrative and federal court proceedings. The case was eventually referred to a magistrate judge to conduct settlement negotiations, to no avail. In the meantime, the state administrative hearings resumed, and the DOL issued revised withholding notices in

---

[1] The circuit court's original opinion (issued on March 1, 2002) and mandate (issued on July 17, 2002), vacated the injunction and remanded the case "with instructions that it be dismissed" (Item 121). Then, on August 8, 2002–after plaintiff had petitioned for rehearing–the circuit issued an amended opinion and mandate directing further proceedings on the remaining damages claims (*see* Items 122, 123, 125).

the amount of $545,276.00, including interest and penalties (*see* Item 204, ¶ 122; Item 215, ¶ 22).

Plaintiff obtained new counsel,[2] and filed its "Amended and Supplemental Complaint" setting forth additional allegations of bad faith, improper motive, and bias in the investigative and adjudicative phases of the DOL proceedings which, according to plaintiff, have come to light since the Second Circuit's decision and mandate.    The amended/supplemental complaint also contains allegations pertaining to the involvement of International Union of Operating Engineers Local 17 in the state proceedings before Mr. Kinn's wage investigation began.   Based on these "new" allegations, plaintiff has renewed its request for preliminary injunctive relief[3] seeking an order directing the DOL to release the $545,276.00 withheld pursuant to the revised withholding notices, and enjoining any further administrative action against plaintiff pending the outcome of this litigation.[4]

---

[2]By orders dated January 7, 2003 (Item 154) and July 15, 2003 (Item 191), the court granted the motions of plaintiff's counsel Brian P. Fitzgerald, Esq., and Henry W. Killeen, III, Esq., respectively, to withdraw from their representation of plaintiff in this case.  Then, on August 8, 2003, Timothy J. Walker, Esq., filed a notice of appearance as counsel for plaintiff (Item 196) in substitution for Timothy J. Greenan, Esq.

[3]As originally filed, the motion for preliminary injunction included a claim that plaintiff is "financially paralyzed" as a result of the DOL administrative proceedings, "has exhausted all of its borrowing power, and without immediate relief . . . will likely cease to exist" (Item 202, p. 8).  This claim was based on the affidavit of plaintiff's accountant, Paul T. Clark (Item 203).  When defendants noticed Mr. Clark's deposition in preparing a response to the motion, plaintiff's counsel sent a letter to the court advising that plaintiff was withdrawing that aspect of its preliminary injunction application pertaining to the destruction of its business in the event the application was denied, since it was "not in a position to expend the resources necessary" to produce Mr. Clark for deposition or to otherwise respond to defendant's contentions in this regard (Item 211).  The parties and the court subsequently signed a stipulation and order to this effect, leaving plaintiff's "claims of deprivation of its constitution [sic] rights" as the sole basis for its request for preliminary injunctive relief (Item 213).

[4]The court has been advised that the adjudicative phase of the state administrative proceedings was finally concluded in November 2004, after a combined 89 days of hearings.  On November 30, 2005, Hearing Officer Gary P. Troue issued a detailed 34-page Report and Recommendation concluding that Diamond "D" willfully violated Article 8 of the New York Labor Law by failing to pay prevailing wages and falsifying payroll records with respect to work performed on three public road projects, and recommending remission of the underpayment (subject to offset by the withholding amounts) plus interest and civil

In response, defendants have filed memoranda, affidavits, and exhibits in opposition to the application for injunctive relief, as well as a cross-motion seeking dismissal of the action on the following grounds:

1.      The claims against the DOL, DAC, and the state officers sued in their official capacities are barred by the Eleventh Amendment and the *Younger* doctrine.

2.      The individual defendants are entitled to qualified immunity against suit for damages.

Because the injunctive relief sought by plaintiff is unavailable, and because the court agrees with defendants that the injunctive and declaratory relief sought by plaintiff is barred by the *Younger* doctrine and that the individual defendants are entitled to qualified immunity, plaintiff's motion is denied, defendants' motion is granted, and the case is dismissed.

## DISCUSSION

**I.      Plaintiff's Motion for Preliminary Injunction**

The primary issue to be addressed with respect to plaintiff's renewed application for injunctive relief is the argument raised by defendants that even assuming the truth of the facts set forth in the proposed amended/supplemental complaint, plaintiff still cannot avoid

---

penalties.  The findings of fact and conclusions of law contained in the Report and Recommendation were adopted by New York State Commissioner of Labor Linda Angello in a Determination and Order issued on December 14, 2005 (*see* "Exhibit" attached to Item 330).

Plaintiff has not sought review of this determination pursuant to N.Y.C.P.L.R. Article 78, the proper avenue for judicial review of a state administrative ruling.  Instead, on January 17, 2006, plaintiff filed a new action in this court, No. 06-CV-35, based on the same facts and circumstances and seeking the same relief sought by this action–with the addition of a cause of action under Article 78 (apparently, though not specifically, invoking this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367).

the basic principle of *Younger* that a federal court cannot enjoin or interfere with an ongoing state administrative proceeding where the state provides an adequate post-deprivation remedy. This is the underlying thrust of the Second Circuit's remand order, and it controls this court's analysis here.

As the circuit court decision emphasized, the *Younger* abstention doctrine is grounded on the deference owed by federal courts to the states, implemented by allowing the state to have the first opportunity to correct constitutional errors that infect its proceedings. "[I]t is only when the state proceeding is brought with no legitimate purpose that this state interest in correcting its own mistakes dissipates, and along with it, the compelling need for federal deference." *Diamond "D" IV*, 282 F.3d at 200. In this regard, it is "the subjective motivation of the state authority in bringing the proceeding [that] is critical to, if not determinative of, [the 'bad faith'] inquiry." *Id.* at 199.

There is nothing contained in the renewed application for injunctive relief, or in the proposed amended/supplemental complaint, to convince the court that it may once again attempt to tread where the circuit court has mandated that it may not. To illustrate, plaintiff has asserted "new" allegations purported to "raise the issue of bias in the adjudication phase of the DOL Hearing, based upon events which have come to light since the Second Circuit Decision" (Item 202, p. 2). Although no specific citations to the record are provided, plaintiff's counsel refers in his supporting affirmation to testimony given at the resumed administrative hearings in 2003 which suggests that Mr. Kinn's assertion as to when he first became aware of complaints about plaintiff's wages "was untrue" (Item 204, p. 2, ¶ 7). According to counsel's affirmation, the basis for this alleged falsehood is that Mr. Kinn testified he spoke to former Diamond "D" employee Donald Nunweiler in 1997 after

Nunweiler had filed a complaint with the DOL in June of that year.  However, these facts were presented to the court by way of testimony at the injunction hearing in August 2000 (*see* Item 57, pp. 46-47), were available to the circuit court as part of the appellate record, and–it must be assumed–were relied upon by the circuit court in ruling that plaintiff failed to qualify for an exception to the application of *Younger* abstention.

Plaintiff also contends that at some point during the resumed administrative hearings (no reference date is provided in the motion papers), DOL's hearing counsel, John Loughlin, admitted that plaintiff was being punished for exercising its constitutional rights.  Plaintiff cites an exchange between Mr. Loughlin and Mr. Greenan during Mr. Kinn's cross-examination, in which Mr. Loughlin stated, "[y]ou took an attitude with this Department, and now you're paying for it" (Item 218, p. 5884).  A more complete colloquy follows:

> MR. GREENAN:   . . . [Mr. Kinn] sent [Diamond "D"] that stack of documents and said, I expect a response.

> HEARING OFFICER:   Right.

> MR. LOUGHLIN:   And your client never responded.

> MR. GREENAN:   We just went through my client's response.

> MR. LOUGHLIN:   That's right.  Fitzgerald's response.  You took an attitude with this Department, and now you're paying for it.

> MR. GREENAN:   You took one point two million dollars of somebody's money based on the most ridiculous thing I have seen in my life.

> MR. LOUGHLIN:   Your client stole from his workers.

> HEARING OFFICER:   I don't want to get into - -

> MR. GREENAN:   The Department stole from my client, and stole from my client for years.  And if he wants to start - -

-10-

MR. LOUGHLIN:   I'll start.

(Item 218, p. 5884).

As defendants point out, this exchange concerns Mr. Kinn's initial (October 1998) audit and withholding notices, which he issued after plaintiff failed to respond to his request for payroll records, and an ensuing letter to the DOL from plaintiff's former counsel, Brian Fitzgerald (Item 204, Ex. 6).   Considered in context, this somewhat heated colloquy between counsel at the DOL hearing surely cannot be considered admissible evidence tending to show that the DOL initiated its investigation of plaintiff in bad faith.   Rather, to the extent the comments of a party's counsel made during the course of an adversary proceeding may be considered evidence at all, Mr. Loughlin's reference to "punishment" clearly refers to the DOL's administrative action taken upon plaintiff's failure to respond to Mr. Kinn's request for records–not, as characterized by plaintiff, to any official action taken by the DOL in retaliation for bringing this lawsuit, or for otherwise exercising its constitutional rights.

Plaintiff also cites Mr. Loughlin's comment during the resumed administrative hearing in 2003 that Diamond "D" "live[s] and die[s] with the Federal Court" (Item 218, p. 4997), as evidence of the DOL's intent to deny plaintiff its right to redress constitutional violations.   However, this court's review of the record indicates that this comment was made in the context of an extended discussion regarding Mr. Greenan's request for a thirty-day adjournment of the DOL hearing to prepare for Mr. Kinn's cross-examination.   In response to Hearing Officer Troue's suggestion of a shorter adjournment as a compromise, Mr. Loughlin stated as follows:

MR. LOUGHLIN:   Mr. Troue, they have done this in the past. . . .

-11-

> This is yet another example of their bad faith.  If you look at the record of this case, they continue to delay and delay.  You cannot allow that to happen again, Mr. Troue.  They don't want this hearing to conclude.  They live and die with the Federal Court.
>
> If you allow them to delay this, you are part of the problem.  You have got to hold them to the cross-examination of Mr. Kinn now.  They have had years and years to prepare for this.

(Item 218, p. 4997).

Plaintiff also seeks to assert "new facts" pertaining to involvement of Local 17 in the affairs of Diamond "D" even before the wage investigation began (*see* Proposed Amended/Supplemental Complaint, Item 204, Ex. 10, ¶¶ 77-88), ostensibly in an attempt to address the Second Circuit's concern that the record developed at the prior injunction hearing produced nothing to establish that the state proceeding "was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."  *Diamond "D" IV*, 282 F.3d at 199.  This court is well aware of the long and contentious history of the relationship between Diamond "D" and Local 17, which will not be revisited here.  *Cf. Diamond D Construction Corp. v. Int'l Union of Operating Engineers, Local Unions No. 17, 17A, 17B, 17C, and 17R*, 15 F. Supp. 2d 274 (W.D.N.Y. 1998) (dismissing as untimely Local 17's counterclaim to compel arbitration of grievances alleging that Diamond "D" violated collective bargaining agreement by, *inter alia*, hiring non-union workers).[5]  Suffice it to say that this history was also well known to plaintiff (if not his current counsel) long before the filing of the original complaint and application for injunctive relief.  In any event, the "facts" alleged in the proposed amended/supplemental complaint with respect to Local 17's

---

[5]As noted in the 1998 decision in *Diamond D v. Local 17*, Joseph DiPizio's son-in-law, Leo M. Hopkins (a Diamond "D" employee), is the son of Leo A. Hopkins, Local 17's Business Manager at the time the union first brought grievances against Diamond "D" in 1991.  *See* 15 F. Supp. 2d at 278.

conduct amount to nothing more than conjecture and speculation on plaintiff's part that Mr. Kinn and the DOL conspired with Local 17 and former Diamond "D" employees to "stick it" to Diamond "D" by initiating an unjustified wage investigation (*see* Item 204, Walker Affirmation, ¶ 70).

Indeed, whether read in isolation or as a whole, the allegations concerning plaintiff's renewed request for injunctive relief continue to fall far short of the requirements for application of the "bad faith" exception to the *Younger* abstention doctrine. Rather, it remains "uncontested that the DOL initiated its wage investigation in response to the written allegations of underpayments made by Diamond D employees, pursuant to its statutory duties under New York's valid prevailing wage law." *Diamond "D" IV*, 282 F.3d at 200.

With respect to the "extraordinary circumstances" exception, plaintiff has not set forth any additional facts to show that there is no state process available to adequately remedy the alleged constitutional violation. Instead, plaintiff argues that "neither the present DOL proceedings, nor an Article 78 challenge would provide Diamond D with any opportunity (much less an adequate opportunity) to raise its constitutional challenges" (Item 202, p. 12). This argument ignores the Second Circuit's express holding that where the state has made remedies available, the federal courts should assume that the remedies are adequate "in the absence of unambiguous authority to the contrary." *Pennzoil v. Texaco*, 481 U.S. 1, 15 (1987), *quoted in Diamond "D" IV*, 282 F.3d at 202; *see also id.*, 282 F.3d at 194 (contractor may mount constitutional challenges to DOL investigation and administrative proceeding in state court Article 78 action) (*citing Solnick v. Whalen*, 49

N.Y.2d 224, 230-31 (1980)); *Spargo v. New York State Commission on Judicial Conduct*, 351 F.3d 65, 79 (2d Cir. 2003) (ability to raise constitutional claims in subsequent state court judicial review of underlying administrative proceeding is sufficient to invoke *Younger* abstention; relevant inquiry is whether state's procedural remedies *could* provide relief sought, not whether state *will* provide constitutional ruling plaintiff seeks); *cert. denied*, 541 U.S. 1085 (2004); *cf. Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001) (finding availability of "ordinary judicial process" provided by state courts for resolving contractual disputes sufficient to reject due process challenge to California Labor Code authorizing withholding of payments due on public works project).

Based on this analysis, I find that plaintiff has failed to demonstrate that the circumstances of this case fall within either of the "tightly defined" exceptions to the *Younger* abstention doctrine. *Diamond "D" IV*, 282 F.3d at 197. Simply put, plaintiff has not come forward with any additional or intervening facts which have come to light since the Second Circuit's remand warranting federal court interference with the state's administrative adjudication, or Article 78 judicial review, of the wage underpayment claims against it. Rather, the amended/supplemental complaint and accompanying motion papers merely rehash the same facts and allegations found by the circuit court, upon review of this court's findings made after extensive evidentiary hearings, briefing, and argument, to be insufficient to avoid *Younger* abstention. In the absence of even a *prima facie* showing of an intervening factual dispute, and in the face of the Second Circuit's mandate to allow the state administrative and judicial processes to have the opportunity to correct any constitutional errors, this court need not engage in another full-blown evidentiary hearing

on plaintiff's renewed preliminary junction application.  *Cf. Distefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001), *cited in Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003).

Accordingly, this court must abstain from taking jurisdiction over plaintiff's federal constitutional claims involving the state proceedings, and is therefore without power to rule on any aspect of plaintiff's request for injunctive relief.[6]

## II.      Defendants' Motion to Dismiss

Defendants contend that the allegations in the Amended and Supplemental Complaint, though greatly expanded from the original, are insufficient to circumvent Eleventh Amendment immunity or *Younger* abstention with respect to the claims for injunctive relief asserted against the state agencies and officers, or to avoid the application of qualified immunity with respect to the individual capacity claims for damages asserted against the state officers.  Because the court has already found that the injunctive and declaratory relief sought by plaintiff is barred by the *Younger* doctrine, it need not address whether that relief is also barred by the Eleventh Amendment.  *Cf. Diamond "D" IV*, 282 F.3d at 193 n.1.  The only remaining issue to be addressed is whether the individual defendants are entitled to qualified immunity from suit for damages based on their involvement in the alleged denial of plaintiff's due process rights.

---

[6]This includes plaintiff's cause of action based on its claim that New York Labor Law § 220 is unconstitutional as applied, since the only relief available to redress such a claim would be declaratory in nature.  *Cf. Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000) (*Younger* doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief).

The doctrine of qualified immunity shields government officials from liability for civil damages under 42 U.S.C. § 1983 unless their actions violate clearly established constitutional or statutory rights of which an objectively reasonable official would have known. *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Justified in part by the risk that the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), the qualified immunity doctrine strikes a balance "between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury." *Kaminsky v. Rosenblum*, 929 F.2d 922, 924 (2d Cir. 1991).

Because qualified immunity is an immunity from suit, and not merely an immunity from judgment, the courts have been encouraged to address assertions of qualified immunity as early as possible in the judicial process. *See Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003). When determining whether the qualified immunity defense applies, the court is required to consider the elements of the defense "in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). This requires determining as a threshold matter "whether, viewing the evidence most favorably to the plaintiff, 'the officer's conduct violated a constitutional right. This must be the initial inquiry.'" *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 55 (2d Cir. 2003) (quoting *Saucier*, 533 U.S. at 201). If the court determines that a constitutional violation has occurred, the next step in the sequence is to

determine whether the right was clearly established at the time of the conduct complained of. *Id*.

In the Amended and Supplemental Complaint, plaintiff alleges that the individual defendants' conduct during the course of the DOL's investigation and administrative adjudication of the wage claims against Diamond "D" has resulted in a deprivation of property without due process, proscribed by the Fifth and Fourteenth Amendments. Following the *Saucier* approach, the court must determine as a threshold matter whether the conduct alleged on the part of the individual defendants rises to the level of a violation of either the procedural or substantive component of the due process clause, viewing the facts alleged and evidence presented in the light most favorable to the plaintiff.

## A.    Procedural Due Process

Diamond "D" alleges in its first cause of action that the administrative investigation and adjudication of the  wage underpayment claims, as conducted by the individual "DOL Defendants," has deprived Diamond "D" of its property, "including, but not limited to, its interest in being paid in full for the construction work it completed, and its right to pursue additional construction projects . . . , without due process of law" (Item 231, ¶ 176). Defendants contend that this cause of action should be dismissed for failure to state a claim upon which relief can be granted in the wake of several recent court decisions, including the Supreme Court's holding in the *G & G Fire Sprinklers* case.

*G & G Fire Sprinklers* involved a due process claim, very similar to plaintiff's claim in this case, brought by a subcontractor against the State of California's Labor Commissioner and other state officials challenging the constitutionality of California's labor

laws which, like New York's, authorize the withholding of payments and imposition of penalties for failure to comply with prevailing wage requirements on public works contracts. The California statutory scheme provides no opportunity for a hearing, either prior to or after issuance of a withholding notice. The exclusive remedy after withholding is a lawsuit by the prime contractor against the awarding body for recovery of the money withheld.

After finding that the subcontractor had suffered a deprivation of a protectable property interest as a result of the state's action, the Ninth Circuit determined that California's scheme for enforcing its prevailing wage laws violated the due process clause of the Fourteenth Amendment because it allows the state to withhold contract payments, disburse money directly to the workers, and impose fines without providing any hearing at which the subcontractor might challenge the validity of the state's findings. *G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 901-04 (9th Cir. 1998). The Supreme Court granted *certiorari*, vacated the judgment, and remanded for further consideration in light of its ruling in *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40 (1999) (state workers' compensation scheme allowing insurer to withhold payment of benefits pending resolution of disputes over reasonableness and necessity of treatment does not deprive employees of "property" under due process clause of Fourteenth Amendment). *Bradshaw v. G & G Fire Sprinklers, Inc.*, 526 U.S. 1061 (1999). On remand, the Ninth Circuit determined that its previous analysis of the due process issue was "fully consistent with" *Sullivan*, and reinstated its judgment and opinion. *G & G Fire Sprinklers, Inc. v. Bradshaw*, 204 F.3d 941, 942 (9th Cir. 2000).

The Supreme Court again granted *certiorari*, and reversed.  *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001).  The Court first noted that where a state statutory scheme is challenged on due process grounds, the inquiry focuses on "whether the State has deprived the claimant of a protected property interest, and whether the State's procedures comport with due process."  *Id.* at 195.  The Court then assumed (without deciding) that the subcontractor had a protected property interest in its claim for payment under its public contracts, but held that the California statutory scheme does not deprive the subcontractor of its claim for payment without due process of law because "California law affords . . . sufficient opportunity to pursue that claim in state court . . . ."  *Id.*

As the Supreme Court explained, when a state withholds payment on a public contract to enforce its prevailing wage laws, the state has made the determination that the contractor failed to comply with the contract's terms, and the contractor "has only a claim that it did comply with those terms and therefore that it is entitled to be paid in full."  *Id.* at 196.   Assuming for purposes of decision that the contractor's claim for payment is a property interest entitled to procedural due process protection, the Court found it to be "an interest . . . that can be fully protected by an ordinary breach-of-contract suit" under state law.  *Id.*   Thus, if the state "makes ordinary judicial process available to [the public contractor] for resolving its contractual dispute, that process is due process."  *Id.* at 197.  The Court explicitly rejected the subcontractor's claim in *G & G Sprinklers*–similar to Diamond "D"'s claim in this case–that the state process was inadequate because the challenged withholding amounts are retained by the contracting public authority pending the outcome of the state court suit, which may last several years.  According to the Court:

> A lawsuit of that duration, while undoubtedly something of a hardship, cannot be said to deprive [the subcontractor] of its claim for payment under the contract.  Lawsuits are not known for expeditiously resolving claims, and the standard practice in breach-of-contract suits is to award damages, if appropriate, only at the conclusion of the case.

*Id.*

As noted by the Second Circuit in its remand order (and by this court in its reconsideration order), to the extent that Diamond "D" was deprived of its interest in obtaining payment on its public contracts because of any undue delay on the part of the DOL in bringing the administrative proceedings, Diamond "D" could have filed an Article 78 mandamus proceeding in the Appellate Division at any time "to compel the DOL to provide expeditious post-deprivation review as required by the prevailing wage law." *Diamond "D" IV*, 282 F.3d at 202; *see also Diamond "D" II*, 110 F. Supp. 2d at 207. Indeed, as mentioned above, the Second Circuit found "in the absence of unambiguous authority to the contrary" that the state court process was adequate to address the alleged constitutional violation in a timely manner.  *Id.*; *cf. Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (there can be no procedural due process violation when governmental actor provides "apparently adequate" procedural remedies and plaintiff has not availed himself of those remedies); *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir.) (state provides adequate due process when it provides "reasonable remedies" to rectify legal error by an administrative body), *cert. denied*, 488 U.S. 868 (1988).

A review of other Second Circuit cases decided subsequent to the remand order further illustrates the futility of plaintiff's due process claim.  For example, in *Munafo v. Metropolitan Transportation Authority*, 285 F.3d 201 (2d Cir. 2002), the plaintiff was

suspended and eventually terminated from his employment with a public authority after administrative disciplinary hearings and union appeals.   Instead of seeking Article 78 review in state court, he brought an action in federal court under § 1983 against the authority and individual officials involved in the administrative proceedings, claiming that he was disciplined in retaliation for the exercise of his First Amendment rights and that he was denied due process during the administrative proceedings.  The individual defendants moved for summary judgment based on qualified immunity, but the district court denied the motions on the ground that there were factual issues to be tried.

The Second Circuit reversed with respect to the due process claim, finding that the individual defendants were entitled to qualified immunity as a matter of law.  The circuit court reviewed the plaintiff's assertions that the hearing officers were biased against him because of his continual safety complaints and union activities, and that the disciplinary system itself was unfair because the officers who presided at the hearings and appeals were either employed or compensated by the public authority defendant, but found no cognizable due process claims against the individual defendants.  This finding was based in significant part on the undisputed fact that the plaintiff "could have pursued his contentions in an Article 78 proceeding" but failed to do so.  *Id.* at 214.  As stated by the circuit court, "if the state affords a remedy for alleged violations of due process, the plaintiff may not complain about the sufficiency of a due process remedy by singling out one stage in the administrative proceedings and ignoring the rest of the array of procedures available to him."  *Id.* at 213.

In *New York State National Organization for Women ("NOW") v. Pataki*, 261 F.3d 156 (2d Cir. 2001), *cert. denied*, 534 U.S. 1128 (2002), claimants who had filed

-21-

discrimination complaints with New York State Division of Human Rights brought a § 1983 class action in federal court against state officials, alleging due process violations as a result of protracted delays in processing their discrimination claims.   The district court rejected the individual defendants' assertion of qualified immunity from money damages in their personal capacity and, following a bench trial, awarded plaintiffs injunctive and declaratory relief.   The Second Circuit reversed, finding no procedural due process violations presented.

After expressing its "deep reservations" about the district court's conclusion that a state's administrative delay coupled with actual prejudice was sufficient to constitute a due process deprivation, the circuit court nonetheless bypassed the issue, finding that the process afforded the claimants was constitutionally adequate.  *Id.*, 261 F.3d at 167-68. The court reiterated the analysis set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), for determining whether government agency determinations comport with constitutional due process requirements, as follows:

> The *Mathews* analysis requires us to weigh: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (quoting *Mathews*, 424 U.S. at 335).   Notwithstanding its belief that the state's delays in processing the plaintiffs' discrimination claims "were extensive and may well have been unreasonably so," *id.* at 168, the circuit court found that the availability of Article 78 review

as an "'additional or substitute procedural safeguard[ ],'" *id.* at 167, caused the second *Mathews* factor to "weigh[ ] dispositively in favor of the government." *Id.* at 168.

The clear import of these decisions is that New York, through Article 78 review of administrative enforcement of its prevailing wage laws, affords public contractors like Diamond "D" all of the process they are due under the Fourteenth Amendment. Since Diamond "D" has not availed itself of that remedy,[7] it cannot maintain a procedural due process claim in this court under § 1983.

Accordingly, even viewing the facts alleged in the amended complaint as true, Diamond "D" cannot succeed on its claim that the conduct of the individual state officials during the course of the DOL's administrative proceedings has resulted in a deprivation of property without procedural due process. The individual state officials are therefore entitled to qualified immunity from liability for damages based on plaintiff's procedural due process claim.

## B.    Substantive Due Process

Defendants also contend that they are entitled to qualified immunity from damages based on plaintiff's substantive due process claim. As discussed in this court's prior rulings, in order to maintain a claim for violation of substantive due process rights, plaintiff must demonstrate that the DOL's actions were "'arbitrary, or conscience-shocking, in a

---

[7]As previously noted (*see* note 4, *infra*), Diamond "D" has not sought Article 78 review of Commissioner Angello's adoption of Hearing Officer Troue's Report and Recommendation, but instead has chosen to file a new action in federal court seeking to add a cause of action under Article 78 based upon supplemental jurisdiction. However, federal courts routinely decline to exercise supplemental jurisdiction over such claims since, under New York law, authority to grant relief pursuant to Article 78 is exclusively vested in New York Supreme Court. See, e.g., *Beckwith v. Erie County Water Authority*, ___ F. Supp. 2d ___, 2006 WL 307497, at *11 (W.D.N.Y. February 8, 2006) (citing cases).

constitutional sense.'"  *Diamond "D" II*, 110 F. Supp. 2d at 207 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)).  Applying this standard to the facts presented at the evidentiary hearing on the initial preliminary injunction application, this court found a "clear and substantial likelihood" that Diamond "D" would succeed on its substantive due process claim.  *Diamond "D" III*, 142 F. Supp. 2d at 406.  This finding was based on the court's assessment of the evidence with respect to the nature of Mr. Kinn's investigation, the lengthy delays that characterized the DOL proceedings, the significant amounts of money withheld as interest and penalties, and the DOL's refusal to allow Diamond "D" to post a bond to secure the underpayment withholdings–all characterized by the court as "arbitrary."  *Id.* at 404-06.[8]

In the wake of the circuit court's finding in its remand order that these facts were insufficient to invoke either the "bad faith" or the "exceptional circumstances" exceptions to the *Younger* abstention doctrine, and upon review of additional recent decisions pertinent to the substantive due process inquiry, the "likelihood of success" determination must be revisited.  First of all, it is clear that the court's "arbitrariness" finding for the purpose of its now-vacated injunction ruling would be insufficient to sustain plaintiff's substantive due process claim.  Rather, plaintiff must show that the DOL's conduct was "so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 ("[O]nly the most egregious official conduct can be said to be

---

[8]The Second Circuit found no need to address this aspect of the court's preliminary injunction ruling "[b]ecause [it] conclude[d] that *Younger* abstention resolves this case . . . ."  *Diamond "D" IV*, 282 F.3d at 193 n. 1.

arbitrary in the constitutional sense." (internal quotation omitted)); *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C.Cir.) ("Only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983."), *cert. denied*, 488 U.S. 956 (1988)). "Substantive due process is an outer limit on the legitimacy of governmental action.  It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action."  *Natale*, 170 F.3d at 263.

Second, and more fundamentally, it is a well-settled constitutional principle that the substantive due process clause protects "only those interests that are 'implicit in the concept of ordered liberty.'"  *Local 342, Long Island Public Service Employees v. Town Board of the Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).  As stated by the Second Circuit, "where the alleged right cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply."  *Id.* (internal quotations and alterations omitted).   In this regard, the Supreme Court has cautioned that "[t]he doctrine of judicial self-restraint requires [courts] to exercise the utmost care" when asked to define or develop rights in this area.  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992), *quoted in Local 342*, 31 F.3d at 1196.   Indeed, the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  *Id.*

In deference to this caveat, the courts have for the most part limited the protections of substantive due process to matters relating to marriage, family, procreation, and the right to bodily integrity. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1978) (collecting cases discussing traditional interests protected by substantive due process). As stated in *Washington v. Glucksberg*, 521 U.S. 702 (1997):

> [T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. [Accordingly], we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.

*Id.* at 720-21 (internal quotation marks and citations omitted).

No case has recognized the due process right asserted by Diamond "D"–*i.e.*, "its interest in being paid in full for the construction work it completed, and its right to pursue additional construction projects" (Item 231, ¶ 176), as a fundamental interest so deeply rooted in history and tradition or implicit in the concept of ordered liberty as to be deserving of protection under the substantive due process clause. In fact, the Second Circuit has expressly rejected the notion that "simple, state-law contractual rights, without more, are worthy of substantive due process protection. Such rights are not the type of 'important interests that have heretofore been accorded the protection of substantive due process.'" *Local 342*, 31 F.3d at 1196 (quoting *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 230 (1985) (Powell, *J.,* concurring); *accord Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) ("Routine state-created contractual rights are not deeply rooted in this Nation's

history and tradition, and, although important, are not so vital that neither liberty nor justice would exist if they were sacrificed.") (internal quotations and alterations omitted).

Although there is little doubt that plaintiff's concerns regarding its ability to receive payment for work performed on public contracts, coupled with its interest in protecting its ability to pursue such work in the future, are important and nontrivial, those concerns "simply are not sufficiently weighty to warrant their protection under the substantive due process rubric." *Empire Transit Mix, Inc. v. Giuliani*, 37 F. Supp. 2d 331, 340 (S.D.N.Y. 1999) (finding that city's *de facto* debarment of concrete supplier from working on city contracts did not violate substantive due process); *cf. Ewing*, 474 U.S. at 229 (Powell, J., concurring) ("Even if one assumes the existence of a property right, . . . not every such right is entitled to the protection of substantive due process.  While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution.") (citation omitted).   As the above discussion with respect to plaintiff's procedural due process claim amply demonstrates, such concerns are adequately addressed by the state judicial process without the need to expand the concept of substantive due process to encompass a right which no court has previously recognized.

Based on this analysis, plaintiff cannot prevail on its claim that the DOL's administrative proceedings were conducted in such a manner as to violate plaintiff's substantive due process rights.  Accordingly, the individual defendants are entitled to qualified immunity from suit for damages based on plaintiff's substantive due process claim.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for a preliminary injunction (Item 201) is denied.  Under the abstention doctrine of *Younger v. Harris* and the continuing mandate of the Second Circuit, this court is without power to rule on plaintiff's requests for injunctive or declaratory relief.  Defendants' cross-motion (Item 219) to dismiss the remaining claims for damages pursuant to 42 U.S.C. § 1983 is granted on the grounds that the individual defendants are entitled to qualified immunity.

The Clerk of the Court is directed to enter judgment in favor of defendants.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN

United States District Judge

Dated:    March 24, 2006

p:\pending\2000\00-335.feb22.06